UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH CLARKE,

                              Plaintiff,                            13-cv-5140 (NSR)

        -against-                                                   OPINION & ORDER

TRAVCO INSURANCE COMPANY,

                              Defendant.

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Joseph Clarke ("Plaintiff") asserts a breach of contract claim against Defendant

Travco Insurance Company ("Defendant" or "Travco") related to an insurance policy issued by

Defendant. Before the Court is Defendant's motion for summary judgment, pursuant to Federal

Rule of Civil Procedure 56. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

        The following facts are taken from the parties' Rule 56.1 statements, declarations, and

exhibits, and are not in dispute, except where noted.

I.      **Factual Background**

        A.      *The Property*

        Plaintiff, at all relevant times, owned and resided at the property located at 62 River

Road, Nyack, New York ("the Property"). (Compl. ¶¶ 1, 6; Sipple Decl. Ex. J (Transcript of

Deposition of Joseph Clarke, April 1, 2014 ("Clarke Dep.")) at 10:1-11, 10:21-24.) Plaintiff's

house was located on the Property approximately twenty feet from the Hudson River. (Clarke

Dep. 12:2-7.)


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8|7|2015

B.      *The Policy*

Travco issued a Homeowners insurance policy to Plaintiff with respect to the Property, with a policy number of 983268297 633 1 ("the Policy"). (Compl. ¶ 4; *see* Sipple Decl. Ex. B.) As of October 29, 2012, Plaintiff did not have separate flood insurance on the Property. (Clarke Dep. 12:12-14.)

The Policy contains several forms, including a High Value Homeowners Policy form, form no. HV 00 03 (10-98), which notes that the policy does not insure against losses excluded under "Section I—Exclusions." (Sipple Decl. Ex. B at TP 000037.) Also included in the Policy is a Special Provisions—New York form, form no. HV 01 31 12 10 (the "Special Provisions Form"). (*Id*. at TP 000007-15.) The Special Provisions Form sets forth changes to the underlying policy documents which appear to be specific to policies in New York. Specifically, one portion of the Special Provisions Form sets forth detail regarding exclusions that are not covered as losses under the policy. It reads, in pertinent part:

**SECTION I — EXCLUSIONS**

The first paragraph of this section is deleted and replaced by the following:

1.   We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

     These exclusions apply whether or not the loss event:
     (a) Results in widespread damage;
     (b) Affects a substantial area; or
     (c) Occurs gradually or suddenly.

     These exclusions also apply whether or not the loss event arises from:
     (a) Any acts of nature;
     (b) Any human action or inaction;
     (c) The forces of animals, plants or other living or dead organisms; or
     (d) Any other natural or artificial process.

                                    * * *

2

    c.   Water Damage, meaning:

      (1)    Flood, surface water, ground water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

      (2)    any water or water borne material that enters through or backs up from a sewer or drain, or which overflows from a sump, sump pump or related equipment, as a direct or indirect result of flood;

      (3)    any water or water borne material located below the surface of the ground including water or water borne material:

            1.  Which exerts pressure on, seeps, leaks or flows into:

                a.   Any part of the dwelling or other structures;

                b.   The foundation of the dwelling or other structures;

                c.   Any paved surface located on the "residence premises"; or

                d.   Any spa, hot tub, or swimming pool.

            2.  Which causes earth movement; or

      (4)    any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

    Direct loss by fire, explosion or theft resulting from water damage will be covered.

(*Id*. at TP 000010-11.)

    *C.*    *The Storm and Damage to Plaintiff's Property*

"Superstorm Sandy" ("the Storm") occurred on October 29, 2012, and impacted portions of the northeastern United States, including the property at issue in this action. (Clarke Dep. 11:4-12:1.) During the Storm, water flooded the lower level of the house located on the Property, to a height of approximately four feet. (Clarke Dep. 15:11-16; Sipple Decl. Ex. L (Excerpts of Transcript of Deposition of Charles McClinton, April 23, 2014 ("McClinton Dep.")) at 148:8-11, 226:7-11.) Further, a wooden dock from another property, approximately fifteen feet by ten feet in size, entered the Property and came to rest within the lower level of the house on Plaintiff's Property, causing damage to the house. (Clarke Dep. 27:4-28:21; McClinton Dep. 159:9-21; Aboulafia Decl. Ex. 1 (Excerpts of Transcript of Deposition of Charles McClinton, April 23,

2014 ("McClinton Dep.")) at 161:2-163:12, 164:9-166:15, 185:8-188:16.) The parties dispute precisely how the wooden dock entered the Property and the house; Plaintiff asserts that the dock was pushed into the property by wind, causing significant structural damage, while Defendant asserts that the wooden dock was transported by water. (Pl.'s Opp'n at 4-5; Def.'s Mem. at 15.)

      D.     *Investigation of the Claim*

      Plaintiff submitted a claim to Travco ("the Claim") in connection with the damage sustained to the Property after the Storm. (Clarke Dep. 39:10-15.) The Travco adjuster assigned to the claim, Charles McClinton ("McClinton") and his manager performed an inspection of the Property in connection with the Claim on November 5, 2012. (McClinton Dep. 73:6-74:5; see Sipple Decl. Ex. C.) During the inspection, McClinton noted water marks in the house in excess of four feet, debris strewn around the house from the water, and the wooden dock in the lower level of the house. (McClinton Dep. 145:11-18, 147:22-148:20, 154:16-19, 157:7-14; Sipple Decl. Ex. C at TC000005-TC000006.) McClinton took photographs during the inspection of the Property and the damage to it. (McClinton Dep. 147:22-148:20, 152:21-22; Sipple Decl. Ex. C at TC 000005; *see* Sipple Decl. Ex. I (photos).) McClinton concluded that, with the exception of a fallen tree at the upper part of the property, the cause of the damage that was the subject of the Claim was flood/water damage. (McClinton Dep. 156:14-24, 160:18-161:12, 161:24-162:13, 189:19-24; Sipple Decl. Ex. C at TC000005.) Travco then issued a letter to Plaintiff on November 7, 2012, denying the Claim. (*See* Sipple Decl. Ex. D.)

      Plaintiff hired Steven Costa, P.E. ("Costa") after the Storm to inspect the damage that had occurred to the Property and to prepare a structural integrity report. (Clarke Dep. 37:17-21; Sipple Decl. Ex. K (Transcript of Deposition of Steven Costa, September 5, 2014 ("Costa Dep.")) at 18:1-19:12.) Costa inspected the Property on November 11, 2012, and prepared a

4

report dated November 16 in connection with his inspection of the Property (the "Costa Report"). (*See* Sipple Decl. Ex. H.)

## II.     Procedural History

Plaintiff initiated the instant action against Defendant in the Supreme Court of the State of New York, County of Westchester, asserting a breach of contract claim related to an insurance policy issued by Travco. (*See* Not. Removal, ECF No. 1.) Defendant timely removed the action to this Court on July 24, 2013, pursuant to 28 U.S.C. §§ 1332 and 1441. (*See* Not. Removal at 1.) Defendant filed an Answer to the Complaint on July 31, 2013. (*See* Answer, ECF No. 3.) The parties completed discovery in October 2014, and Defendant filed the instant motion on February 4, 2015. (*See* Def.'s Mot. Summ. J., ECF No. 43.)

### STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 states, in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also meet its initial burden that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *Hill v. Melvin*, No. 05 Civ. 6645, 2006 WL 1749520, at *4 (S.D.N.Y. June 27, 2006) ("The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof."); *Fuertado v. City of New York*, 337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004) ("The moving

party may use a memorandum or brief to 'point to' the absence of evidence and thereby shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim.").

If the moving party fulfills its preliminary burden, the onus shifts to the non-movant to prove or raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). The party asserting that a fact is genuinely disputed must identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 244 (S.D.N.Y. 2001). The non-movant must support their assertion by "citing to particular parts of materials in the records" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators*, Inc., 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).

Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."). Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

## DISCUSSION

**I.      Admissibility of the Costa Report**

As an initial matter, Defendant contends that the Costa Report, the report by Plaintiff's expert witness, is inadmissible to establish that wind caused the damage to Plaintiff's property.[1] This is relevant to the summary judgment inquiry because Plaintiff relies in part on Costa's testimony to raise a question of material fact, and "[i]t is appropriate for a district court ruling on summary judgment to consider only admissible evidence." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001); *see Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that, 'in determining the appropriateness of a grant of summary judgment, [the Circuit Court], like the district court in awarding summary judgment, may rely

---

[1] Plaintiff avers that the Court should disregard this aspect of Defendant's motion as untimely and in contravention of the undersigned's Individual Rules, contending that a motion to exclude Plaintiff's Expert must be made *in limine* and at the time the pretrial report is filed. This argument is unavailing. Defendant has not made a motion to exclude the Costa Report or Costa's potential trial testimony, but rather has argued that the Court should not consider them *on the instant motion* because of their inadmissibility. As set forth above, the Court may only consider admissible evidence at the summary judgment stage. Thus, Defendant's argument is not properly raised.

only on admissible evidence.'" (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d

Cir.2004))).

 Admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702

sets forth, in pertinent part:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702. In determining whether expert testimony is admissible under this rule, federal

courts apply the standard set forth in *Daubert*, in which the Supreme Court held that trial courts

should "ensure that any and all scientific testimony or evidence admitted is not only relevant, but

reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The courts'

"gatekeeping" obligation under *Daubert* "applies not only to testimony based on 'scientific'

knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

 "Rule 702 requires that expert testimony rest on knowledge, a term that connotes more

than subjective belief or unsupported speculation." *Atl. Specialty Ins. v. AE Outfitters Retail Co.*,

970 F. Supp. 2d 278, 291 (S.D.N.Y. 2013) (internal quotation omitted); *see In re Rezulin*

*Products Liab. Litig.*, 309 F. Supp. 2d 531, 541 n.17 ("[T]he word 'knowledge' connotes more

than subjective belief or unsupported speculation." (quoting *Daubert*, 509 U.S. at 590)). Further,

an expert's opinion must be "sufficiently grounded in reliable facts." *Atl. Specialty Ins.*, 970 F.

Supp. 2d at 285. "[W]hen an expert opinion is based on data, a methodology, or studies that are

simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the

exclusion of that unreliable opinion testimony," *Id*. at 266; *see Atl. Specialty Ins.*, 970 F. Supp.

2d at 285 ("When presented with an expert opinion that is not sufficiently grounded in reliable facts, '[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (alteration in original)).

In deciding whether challenged expert testimony is admissible under Rule 702, a trial court may choose to hold an evidentiary hearing, *Atl. Specialty Ins.*, 970 F. Supp. 2d at 285, but the decision of "[w]hether to hold a Daubert hearing is within the discretion of the court," *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007) (citing Committee Note to 2000 Amendment to Rule 702). An evidentiary hearing "is unnecessary when the evidentiary record pertinent to the expert opinions is already well-developed." *Malletier*, 525 F. Supp. 2d at 581. Here, the parties have briefed the issue of admissibility, Costa has been deposed, and his report and deposition testimony are before the Court on the instant motion; a *Daubert* hearing would add nothing to the record before the Court, and thus is unnecessary. *See, e.g., Atl. Specialty Ins.*, 970 F. Supp. 2d at 285 (finding evidentiary hearing unnecessary where parties had briefed admissibility issue, experts had been deposed, and expert reports were before court).

The Costa Report states that "[t]he structure was damaged from a wind driven wood dock and masonry railing." (Sipple Decl. Ex. H at COSTA 000002.) Costa does not set forth any data or underlying description of his methodology. According to the report, his conclusion was based on "his experience and best opinions." (*Id*. at COSTA 000005.) However, Mr. Costa's "data" and "methodology" appear to involve nothing more than "subjective belief or unsupported speculation" based on his experience living across the river during the Storm:

Q: Having not undertaken any analysis as to what the wind speeds were during Storm Sandy, how do you conclude that the wind had anything at all to do with this dock ending up in the basement of Mr. Clarke's home?

A: Because it was Hurricane Sandy, and I also live on the river across from Spring Valley.

Q: Do you know what the wind speeds were that day, sir?

A: No.

* * *

Q: And you didn't undertake any efforts to investigate any of that meteorological data in coming to your conclusion, did you?

A: Not at all.

(Costa Dep. at 47:16-48:12.) Even more troubling, Mr. Costa appears to have possibly based his

conclusions on an erroneous assumption:

Q: You have no data other than your personal experience living on the other side of the river of what you felt the strength of the storm was on October 29, 2012, to premise your conclusion that the wind blew the dock – or drove the dock into the back of the house, is that right?

[objection from counsel]

A: We're dealing with Hurricane Sandy. Any hurricane has a minimum speed of 70 miles an hour.

Q: Do you know if this storm was actually downgraded from a hurricane to a storm when it hit land?

A: No.

Q: Would it surprise you to know that it was not a hurricane level storm when it hit land and when it hit Nyack, New York?

A: Yes.

Q: But having not done any meteorological investigation, you would not know whether or not it was actually downgraded from a hurricane to a storm when it hit land, would you?

A: No.

(Costa Dep. at 48:22-49:23.)

10

In the instant case, Mr. Costa's report and testimony are inadmissible as expert testimony because his conclusion that the dock was wind-driven is "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached." *Atl. Specialty Ins.*, 970 F. Supp. 2d at 285. To be admissible, expert testimony must rely on knowledge. The Costa report is plainly inadequate in that it does not set forth any foundation upon which Costa's expert opinion could rest and it is not sufficiently grounded in reliable facts, but rather rests upon unsupported speculation. Thus, the Court cannot consider the Costa Report or Costa's testimony as expert testimony in deciding the instant motion for summary judgment.

The Court will, however, consider Costa's testimony as an opinion made by a lay witness under Rule 701, based on his inspection of the Property shortly after the Storm.

## II.     Interpreting the Policy and Whether It Excludes the Damage to Plaintiff's Property

Even if the Court were to find the Costa Report admissible, however, Defendant's motion for summary judgment would still be granted because Plaintiff has failed to prove or raise the existence of a genuine issue of material fact that would necessitate a trial.

### A.     *Insurance Policy Interpretation Principles in New York*

"Insurance policies are contracts and are therefore interpreted according to the rules of contract interpretation." Frazer Exton Dev., L.P v. Kemper Env., Ltd., 153 F. App'x 31, 32 (2d Cir. 2005) (citing *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 183-84 (2d Cir.2003)). Under New York[2] law, "an insurance contract is interpreted to give effect to

---

[2] New York law is controlling in this matter. Because this case was removed from the Supreme Court of the State of New York, Westchester County, based on diversity of citizenship, the choice of law rules of New York apply. Here, Plaintiff is a citizen of New York and the subject property is located in New York. In addition, the injury (the damage to Plaintiff's property) occurred in New York. Thus, the substantive law of New York applies to this matter as well. See O'Neill v. Yield House, Inc., 964 F. Supp. 806, 809 (S.D.N.Y. 1997). This is not disputed by the parties.

the intent of the parties as expressed in the clear language of the contract." *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000).

When interpreting an insurance policy in a matter where New York law applies, "the initial question for the court on a motion for summary judgment is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" *SCW West LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 524 (E.D.N.Y. 2012) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). Ultimately, "[t]he matter of whether the contract is ambiguous is a question of law for the court." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465-66 (2d Cir. 2010).

An ambiguity exists in a contract where its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods*, 309 F.3d at 83 (quoting *Morgan Stanley Group Inc. v. New Eng. Ins. Co.*, 225 F.3d at 275). Similarly, because insurance policies are analyzed as contracts generally, "a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). On the other hand, there is no ambiguity where the language of an insurance policy has "a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978); *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). That the parties set forth competing interpretations in litigation proceedings does not render otherwise plain and clear language ambiguous. *See Seiden Assocs. Inc. v. ANC Holdings, Inc.*,

12

959 F.2d 425, 428 (2d Cir. 1992) (contractual language "is not made ambiguous simply because the parties urge different interpretations.").

> B.    *Application of Policy Interpretation Principles to the Instant Motion*

Here, the parties' dispute can be distilled to a single question: does the damage caused to Plaintiff's property fall within the water damage exclusion of the Policy? It is clear, by the plain and unambiguous language of the policy, that the damage does fall within the exclusion, and therefore Plaintiff cannot prevail on his claim.

The facts of this case are essentially undisputed. A dock, floating on top of water, was pushed by wind into the lower level of Plaintiff's house, causing damage to the Property. Plaintiff seeks to differentiate damage to the Property caused by dock from damage caused by flood waters and avers that the damage done by the dock was caused solely by wind and therefore falls outside the provision excluding water damage from coverage under the Policy. (*See* Pl.'s Opp'n at 3, 4-5.) The Court is skeptical that this sort of differentiation is truly possible or supported by the record before it but, even if it is, the distinction does not defeat the provision of the Policy excluding coverage for water damage.

The exclusion provision sets forth that the Policy does not cover "any direct *or indirect* loss or damage *caused by, resulting from, contributing to or aggravated by* any of these excluded perils." (Sipple Decl. Ex. B at TP 000010 (emphasis added).) The Policy then goes on to include an anti-concurrent causation clause which states that "[l]oss from any of these perils is excluded *regardless of any other cause or event contributing concurrently or in any sequence to the loss*." (*Id.* (emphasis added).) One of the "excluded perils" in the Policy is "Water Damage," which is defined in part as "flood, surface water, ground water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, *whether or not a result of precipitation or driven by wind*." (*Id.* at TP 000011 (emphasis added).) These terms

13

have a definite and precise meaning when read within the context of the agreement as a whole, in particular when read in conjunction with the various clauses regarding exclusions from the Policy. There is no ambiguity in the relevant portions of the Policy.

The Policy unambiguously excludes any damage "caused by" or "aggravated by" the types of water described in the exclusion provision, regardless of any other contributing causes and whether or not it was "driven by wind." While it appears possible that the dock may have been driven into the Property by wind, as Plaintiff asserts, it is clear from the record that the dock was driven into the house because it had been floating on, and was also driven by, water. (Aboulafia Decl. Ex. 4 (Transcript of Deposition of Peter Svoboda, October 2, 2014 ("Svoboda Dep.")) at 80:20-81:14.)  Even Costa—whose testimony was proffered by Plaintiff to rebut the claim that the damage involved water, as opposed to wind—testified to this in his deposition:

> Q: As you sit here today, based on what you observed is it your belief that this dock was actually lifted up into the air and blown into the house, or that it was pushed by the wind on top of water into the house? . . . .
>
> A: Pushed *on top of the water* into the house.

(Costa Dep. at 42:9-17; *see also id.* at 41:17-21, 45:9-46:9.) There is no dispute that water was involved in the dock's movement. Even if wind were the main cause, it is indisputable that the water upon which the dock was resting at least indirectly caused or aggravated the damage to Plaintiff's property. Further, the language of the anti-concurrent causation clause means that "where a loss results from multiple contributing causes, coverage is excluded if the insurer can demonstrate that *any* of the concurrent or contributing causes are excluded by the policy." *ABI Asset Corp. v. Twin City Fire Ins. Co.*, No. 96-CV-2067 (AGS), 1997 WL 724568, at *2 (S.D.N.Y. Nov. 19, 1997) (emphasis in original). Ultimately, it is clear that even if wind was a contributing cause and/or the dock was in some way "driven by wind," the exclusion still applies and thus bars Plaintiff from recovering under the Policy for the damage to his property.

14

Plaintiff has failed to identify any genuinely disputed issues of material fact as to whether the policy exclusion applies in this matter, which is the crux of the Plaintiff's entire claim. The unambiguous language of the policy exclusion for water damage clearly excludes the damage caused to Plaintiff's property as a matter of law, and a reasonable jury could not return a verdict in Plaintiff's favor. Thus, Defendant's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at Docket No. 43 and enter judgment for the Defendant accordingly.

Dated:   August 7, 2015                                         SO ORDERED:
        White Plains, New York

                                                       NELSON S. ROMÁN
                                      United States District Judge